1
2
3
4
5
6
7
8

## UNITED STATES DISTRICT COURT

9

## CENTRAL DISTRICT OF CALIFORNIA

10

11      CAROLYN M. D.,[1]                    Case No. 2:20-cv-06725-AFM

12                    Plaintiff,             **MEMORANDUM OPINION AND**
                                             **ORDER AFFIRMING DECISION**
13            v.                             **OF THE COMMISSIONER**

14      KILOLO KIJAKAZI, Acting
15      Commissioner of Social Security,

16                    Defendant.

17

18          Plaintiff filed this action seeking review of the Commissioner's final decision

19   denying her applications for disability insurance benefits and supplemental security

20   income. In accordance with the case management order, the parties have filed briefs

21   addressing the merits of the disputed issues. The matter is now ready for decision.

22                              **BACKGROUND**

23          In February 2018, Plaintiff filed applications for disability insurance benefits

24   and supplemental security income, alleging disability beginning November 3, 2016.

25   (Administrative Record ("AR") 154-168.) Plaintiff's applications were denied. (AR

26

27   [1] Plaintiff's name has been partially redacted in accordance with Federal Rule of Civil Procedure
     5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case
28   Management of the Judicial Conference of the United States.

84-89.) On November 7, 2019, Plaintiff appeared with counsel at a hearing conducted before an Administrative Law Judge ("ALJ"). At the hearing, Plaintiff and a vocational expert ("VE") testified. (AR 30-47.)

On November 25, 2019, the ALJ issued a decision finding that Plaintiff suffered from the following medically severe impairments: right shoulder impingement, obesity, and osteoarthritis of the knees. (AR 18.) After determining that Plaintiff's impairments did not meet or equal a listed impairment, the ALJ then assessed Plaintiff's residual functional capacity ("RFC"). (AR 20-23.) Relying on the testimony of the VE, the ALJ concluded that Plaintiff was able to perform jobs existing in significant numbers in the national economy, including cashier II, ticket seller, and "assembler, production." (AR 24.) Accordingly, the ALJ determined that Plaintiff was not disabled from November 3, 2016 through the date of his decision. (AR 25.) The Appeals Council denied review (AR 6-10), rendering the ALJ's decision the final decision of the Commissioner.

## DISPUTED ISSUES

1. Whether the ALJ properly evaluated the medical opinions.
2. Whether the ALJ provided legally sufficient reasons for rejecting Plaintiff's subjective complaints.

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014). Substantial evidence means "more than a mere scintilla" but less than a preponderance. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. In the social security context, the substantial evidence threshold is "not

high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153 (2019). This Court must review the record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Lingenfelter*, 504 F.3d at 1035. Where evidence is susceptible of more than one rational interpretation, the Commissioner's decision must be upheld. *See Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).

## DISCUSSION

## I.  Whether the ALJ properly evaluated the medical opinions.

Plaintiff contends that the ALJ failed to articulate legally sufficient reasons for rejecting the opinions of Seung Ha Lim, M.D., Betty Santiago, M.D., and Reginald Alexander, M.D. (ECF 18 at 6-9.) The Commissioner argues that the ALJ properly evaluated the opinion evidence. (ECF 19 at 4-10.)

### A.  Relevant Medical Evidence

As the ALJ noted, an x-ray of Plaintiff's right knee taken in February 2014 (prior to the alleged date of onset) showed "only tricompartmental degenerative changes." (AR 22, citing AR 360.)

On November 1, 2016, Plaintiff presented to the emergency room complaining of right shoulder pain after hitting it on a car four days earlier. (AR 290, 295.) Plaintiff described her pain as 6/10, but reported that she did not take any medications to alleviate the symptoms. She denied any numbness, tingling, redness or swelling. Other than the right shoulder pain, physical examination was normal, including full range of motion of the right shoulder with only mild tenderness. Imaging of the right shoulder revealed an anteriorly dislocated right humeral head and moderate right acromioclavicular osteoarthropathy, but no evidence of acute fractures. Plaintiff was diagnosed with an anteriorly dislocated right humeral head. She underwent a closed reduction of the dislocation, which she tolerated well. She was placed in a shoulder immobilizer. Post-reduction imaging showed the dislocation had been reduced. Plaintiff was discharged from the hospital on November 2, 2016, with notation that her pain had improved. (AR 290-316, 327, 338-339.)

The ALJ discussed treatment notes from a February 2017 office visit at the Northeast Valley Health Corporation which indicate that Plaintiff appeared in order to obtain completion of her SSI form. Plaintiff stated that she wanted the doctor to fill out disability paperwork based upon her lower back pain. Babak Baradar-Bokaie, M.D., refused to complete the form, explaining that Plaintiff had never been seen for lower back pain and there was no radiologic study regarding her lower back pain. Further, Plaintiff did not want to be examined for her lower back pain at that time. Instead, she told her physician that she wanted to choose another primary care provider who would fill in her SSI form for her. (AR 374-376.)

Plaintiff sought treatment for right shoulder pain in March 2017. Plaintiff reported that the pain was only occasional when lifting heavy things and rated her pain as 2/10. X-rays of Plaintiff's right shoulder were unremarkable. On examination, Plaintiff had full range of motion of the right shoulder and 5/5 ER strength, but positive impingement signs. (AR 288-289.)

Dr. Lim

Dr. Lim conducted a consultative internal medicine evaluation in July 2019. According to Dr. Lim, Plaintiff complained of a history of back pain of 20 years, knees pain since childhood, and right shoulder pain since 2016. Physical examination revealed Plaintiff generated 45 pounds of force with her right hand and 55 pounds of force with her left hand. Her gait was slow with complaint of knee pain. Plaintiff had back pain on motion with normal range of motion. With respect to Plaintiff's right shoulder, examination showed pain on motion and decreased range of motion with 80/150° of forward flexion and abduction, 40/80° of internal and external rotation. Dr. Lim noted pain on motion, crepitation, and decreased range of motion of the knees at 110/150° of flexion but normal extension. The remaining upper and lower extremities were normal. (AR 668-670.) Plaintiff had normal muscle tone without atrophy. Other than handgrip, her strength was 5/5 throughout without focal motor

deficits. Sensation was grossly intact throughout and her deep tendon reflexes were 2/2 and symmetrical throughout. (AR 671.)

Dr. Alexander

Dr. Alexander treated Plaintiff for shoulder pain. (AR 502-567.) Physical examination on April 10, 2018 revealed Plaintiff to be in no acute distress; her right upper extremity range of motion was 0-150 actively and 0-180 passively. Dr. Alexander diagnosed Plaintiff with pain in right shoulder, sprain of the right shoulder joint, and sequela (Bankart). He noted that the July 2017 MRI of her shoulder showed chronic Hill-Sachs[2] and Bankart.[3] (AR 504, 513.) Dr. Alexander recommended that Plaintiff try intra-articular injection, but Plaintiff indicated that she would "like to hold off." Dr. Alexander also prescribed physical therapy and Voltaren gel topical. He stated that he would not consider surgery until Plaintiff had a stable living condition so that she could comply with postoperative protocol.

**B.  The ALJ's Decision**

The ALJ summarized the above evidence and observed that Plaintiff's "physical examinations during the relevant period have generally been good." (AR 22, citing AR 365 (July 2017), 376 (February 2017), 673 (November 2018).)

With respect to the medical opinions, the ALJ noted that Dr. Lim placed Plaintiff at a reduced range of light exertion with the following limitations: standing/walking no more than four hours in an eight-hour workday; sitting no more than six hours in an eight-hour workday; "overhead reaching limited to occasional use of the right upper extremity"; and "pushing and pulling limited to occasional use of the bilateral lower extremities." (AR 23.) With the exception of the environmental limitations, the ALJ found Dr. Lim's opinion persuasive because it was based upon

---

[2] "The Hill-Sachs lesion is an osseous defect of the humeral head that is typically associated with anterior shoulder instability." See https://pubmed.ncbi.nlm.nih.gov/22474094/.

[3] A Bankart lesion is damage to the lower half of the glenoid socket, and typically occurs with dislocated shoulders. See https://www.healthline.com/health/torn-labrum#symptoms.

a thorough examination, was supported with explanation, and was consistent with the record as a whole. (AR 23.)

The ALJ was only partially persuaded by Dr. Santiago's opinion, noting that she did not examine Plaintiff, did not have access to the complete record, and did not adequately consider Plaintiff's obesity or bilateral knee osteoarthritis. (AR 23.)

Last, the ALJ addressed Dr. Alexander's opinion, observing that it placed Plaintiff at "essentially sedentary exertion." The ALJ found Dr. Alexander's opinion not persuasive because it was in checklist-style form, included only conclusions without rationales for functional limitations, and the limitations were more extreme than the objective evidence in the record. (AR 23.)

The ALJ concluded that Plaintiff is able to perform light work with the following limitations: She can lift and carry 20 pounds occasionally and 10 pounds frequently; can stand and/or walk for four hours in an eight-hour workday; can sit for six hours in an eight-hour workday; has to have a stand/sit option every 30 minutes; can never climb ladders, ropes or scaffolds; can occasionally climb ramps and stairs; can frequently balance; can occasionally stoop, kneel, crouch and crawl; can have no exposure to unprotected heights or dangerous machinery; and can occasionally reach overhead with the right upper extremity. (AR 20-21.)

### C.  Relevant Law

"The ALJ is responsible for translating and incorporating clinical findings into a succinct RFC." *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015). In doing so, the ALJ must articulate a "substantive basis" for rejecting a medical opinion or crediting one medical opinion over another. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014).

The Ninth Circuit has required that an ALJ must provide "clear and convincing reasons" supported by substantial evidence before rejecting a treating or examining physician's uncontradicted opinion and "specific and legitimate reasons" supported by substantial evidence before rejecting a treating or examining physician's

contradicted opinion. *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017); *Ghanim v. Colvin*, 763 F.3d 1154, 1160-1161 (9th Cir. 2014). Under Ninth Circuit authority, an ALJ could meet this burden "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Trevizo*, 871 F.3d at 675 (quoting *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).

Because Plaintiff filed her applications after March 27, 2017, her claim is subject to the revised regulations. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01 (Jan. 18, 2017). The revised regulations provide that the Commissioner "will not defer or give any specific evidentiary weight ... to any medical opinion(s) ... including those from [the claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, under the revised regulations, an ALJ need "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s), including those from [a claimant's] medical sources." *See* 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, an ALJ is to evaluate medical opinions and prior administrative medical findings by evaluating their "persuasiveness." *Id*. In determining how "persuasive" a medical source's opinions are, an ALJ must consider the following factors: supportability, consistency, treatment or examining relationship, specialization, and "other factors." 20 C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5). Supportability and consistency are "the most important factors."[4] While the ALJ must articulate how she considered supportability and consistency, an explanation for the remaining factors is not required except when deciding among

---

[4] Supportability is the extent to which an opinion or finding is supported by relevant objective medical evidence and the medical source's supporting explanations. 20 C.F.R. §§ 404.1520c(c)(1); 416.920c(c)(1). Consistency is the extent to which an opinion or finding is consistent with evidence from other medical sources and non-medical sources, including the claimants themselves. 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2), 416.902(j)(1);   *see also Martinez V. v. Saul*, 2021 WL 1947238, at *3 n.5 (C.D. Cal. May 14, 2021).

differing yet equally persuasive opinions or findings on the same issue. 20 C.F.R.
§§ 404.1520c(b), 416.920c(b).

District courts in this circuit have observed that it is not clear whether the Ninth
Circuit precedent remains viable. *See Allen T. v. Saul*, 2020 WL 3510871, at *3 (C.D.
Cal. June 29, 2020) ("It remains to be seen whether the new regulations will
meaningfully change how the Ninth Circuit determines the adequacy of the an ALJ's
reasoning and whether the Ninth Circuit will continue to require that an ALJ provide
'clear and convincing' or 'specific and legitimate reasons' in the analysis of medical
opinions, or some variation of those standards."); *Thomas S. v. Comm'r of Soc. Sec.*,
2020 WL 5494904, at *2 (W.D. Wash. Sept. 11, 2020) ("The Ninth Circuit has not
yet stated whether it will continue to require an ALJ to provide 'clear and convincing'
or 'specific and legitimate' reasons for rejecting medical opinions given the
Commissioner's elimination of the hierarchy.").[5] While recognizing the changes
effectuated by the new regulations, some district courts have continued to apply the
"specific and legitimate" standard as a "benchmark against which the Court evaluates
[the ALJ's] reasoning." *See, e.g., Kathleen G. v. Comm'r of Soc. Sec.*, 2020 WL
6581012, at *3 (W.D. Wash. Nov. 10, 2020). Other district courts have found that
Ninth Circuit precedent delineating the deference due to physician opinions does not
survive the new regulations because those cases relied on the "treating source rule"
in the prior version of the regulations.[6] *See, e.g., Kathy Jean T. v. Saul*, 2021 WL

---

[5] As a general matter, this Court must defer to the new regulations, even where they conflict with
prior judicial precedent, unless the prior judicial construction "follows from the unambiguous terms
of the statute and thus leaves no room for agency discretion." *See Allen T.*, 2020 WL 3510871, at
*3 (C.D. Cal. June 29, 2020) (quoting *Nat'l Cable & Telecomms. Ass'n v. Brand X Internet
Services*, 545 U.S. 967, 981-982 (2005)).

[6] Under the prior regulations, an ALJ generally accorded controlling weight to a treating physician
when the doctor utilized medically approved diagnostic techniques to support the offered opinion,
and where the opinion was not inconsistent with other substantial evidence. *See* 20 C.F.R.
§§ 404.1527(c)(2), 416.927(c)(2); *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017). Under the
new regulations, a treating source is not entitled to the same presumption, particularly when another
medical opinion is more consistent with or better supported by evidence in the record. 20 C.F.R.
§§ 404.1520c(a), 416.920c(a).

2156179, at *5 (S.D. Cal. May 27, 2021) ("This measure of deference to a treating physician is no longer applicable under the 2017 revised regulations."); *Jones v. Saul*, 2021 WL 620475, at *6 (E.D. Cal. Feb. 17, 2021) (finding the revised regulations valid, entitled to deference, and supersede prior Ninth Circuit case authority interpreting the treating physician rule); *see* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 5853) (Jan. 18, 2017) (available at 2017 WL 168819) ("[W]e are not retaining the treating source rule ... for claims filed on or after March 27, 2017.").

In any case, the Commissioner's new regulations still require the ALJ to explain his or her reasoning and to specifically address how he or she considered the supportability and consistency of the opinion. *See* 20 C.F.R. §§ 404.1520c, 416.920c; *see P.H. v. Saul*, 2021 WL 965330, at *3 (N.D. Cal. Mar. 15, 2021) ("Although the regulations eliminate the 'physician hierarchy,' deference to specific medical opinions, and assigning 'weight' to a medical opinion, the ALJ must still 'articulate how [he/she] considered the medical opinions' and 'how persuasive [he/she] find[s] all of the medical opinions.") (citation omitted). As always, the ALJ's reasoning must be free of legal error and supported by substantial evidence. *See Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020). Thus, even if the Ninth Circuit's requirements are no longer applicable, the Court still must determine whether the ALJ adequately explained how he considered the supportability and consistency factors relative to the physicians' opinions and whether the reasons were free from legal error and supported by substantial evidence. *See Martinez V. v. Saul*, 2021 WL 1947238, at *3 (C.D. Cal. May 14, 2021); *Titus L. S. v. Saul*, 2021 WL 275927, at *7 (C.D. Cal. Jan. 26, 2021).

**D. Analysis**

Plaintiff contends that the ALJ erred in considering the opinions of Drs. Lim, Santiago, and Alexander. For the following reasons, Plaintiff's contentions lack merit.

The opinions of Drs. Santiago and Lim[7]

On August 10, 2018, State agency physician Betty Santiago, M.D., reviewed the record on initial determination. Dr. Santiago assessed Plaintiff's residual functional capacity, opining that Plaintiff can lift/carry 20 pounds occasionally and 10 pounds frequently; stand/walk for six hours in an eight-hour day; and occasionally reach in front, laterally, and overhead with the right upper extremity. (AR 57-62.)

Dr. Lim's opinion, rendered after his July 2018 examination, included the following limitations: Plaintiff can stand/walk four hours in an eight-hour day; sit for six hours in an eight-hour day; lift/carry 20 pounds occasionally and 10 pounds frequently; push/pull and reach overhead occasionally with the right upper extremity; push/pull occasionally with the lower extremities bilaterally; occasionally climb, crouch, stoop, crawl, and kneel; and she had environmental limitations from asthma. (AR 671-672.)

The ALJ found Dr. Lim's opinion persuasive and essentially adopted it in full. Among other things, the ALJ specifically included Dr. Lim's restriction to occasional overhead reaching. (AR 21.) On the other hand, the ALJ found Dr. Santiago's opinion only partially persuasive because she did not examine Plaintiff, did not have access to the entire record at the time she rendered it, and did not adequately consider Plaintiff's obesity or knee osteoarthritis. (AR 23.)

According to Plaintiff, the ALJ erred in his consideration of Dr. Lim's opinion because he failed to include a limitation to occasional reaching to the front and laterally with the right upper extremity. Although Plaintiff acknowledges that Dr. Lim's opinion does not actually express such a reaching limitation, she argues that the ALJ should have interpreted Dr. Lim's opinion to include it. Her argument rests on a somewhat convoluted construction of Dr. Lim's opinion that Plaintiff can

---

[7] With respect to Drs. Santiago and Lim, Plaintiff's claim involves solely the opinions related to her ability to reach with her right upper extremity. Plaintiff addresses the two physicians' opinions in a single analysis (ECF 18 at 10), and the Court follows suit.

10

"push/pull and reach overhead occasionally with the right upper extremity." (*See* ECF 18 at 10-11.) Referencing that opinion, Plaintiff argues as follows:

> Whether Dr. Lim meant overhead to apply to both pushing and pulling and reaching is unclear on this record. The last antecedent rule suggests that overhead describes reaching, not pushing/pulling. The medical question is answered by Dr. Santiago, [who opined that Plaintiff] can reach in front, laterally, and overhead occasionally with the right upper extremity. … The ALJ did not consider the ramifications of Dr. Lim's statement nor the synthesis of the medical record by Dr. Santiago.

(ECF 18 at 10-11, citing AR 61-62.) Essentially, Plaintiff contends that the ALJ should have construed Dr. Lim's opinion that she can occasionally push/pull as implying the same limit to Plaintiff's ability to reach in front and laterally. (ECF 18 at 10-11.)

Plaintiff's argument lacks legal and factual support. To begin with, Dr. Lim's opinion explicitly addresses and restricts Plaintiff's ability to *reach overhead*. It does not mention any other type of reaching. The ALJ did not err by failing to impose limitations that were not set forth in Dr. Lim's opinion. Furthermore, Plaintiff's claim is premised on an assumption that a pushing/pulling limitation encompasses an identical limitation on front/lateral reaching. Plaintiff, however, cites no authority for such a presumption, and logic supports the opposite conclusion: The fact that pushing/pulling and reaching are listed as separate abilities indicates that the physical demands of these activities are different. Accordingly, Plaintiff has failed to demonstrate that the ALJ erred in evaluating Dr. Lim's opinion.[8]

---

[8] The ALJ's decision fails to separately include Dr. Lim's limitation on pushing and pulling with the right upper extremity. Nevertheless, as Plaintiff notes, the ALJ included a limitation to pushing/pulling with both the upper and lower extremities in his hypothetical to the VE. (AR 42; *see* ECF 18 at 8.) The VE testified that an individual with those limitations could perform work existing in significant numbers in the economy, and the ALJ adopted that conclusion. Accordingly, any error in failing to recite that limitation in the decision was harmless. *See Stout v. Comm'r of*

With respect to Dr. Santiago's opinions, Plaintiff's challenge fares no better. Plaintiff does not contend that the ALJ failed to consider the supportability and consistency of Dr. Santiago's opinions. Indeed, the ALJ's decision belies any such contention. (*See* AR 23.) Rather, Plaintiff complains that the ALJ erred by failing to specifically reject Dr. Santiago's opinion limiting Plaintiff to occasional forward and lateral reaching.[9] (ECF 18 at 13.) However, when a single medical source provides multiple opinions and findings – as Dr. Santiago did here – the ALJ will articulate how he or she considered those opinions in a single analysis. Thus, contrary to Plaintiff's assumption, the ALJ was not required to address each of Dr. Santiago's opinions individually. 20 C.F.R. §§ 404.1520c(b)(1), 416.920c(b)(1) ("We are not required to articulate how we considered each medical opinion or prior administrative medical finding from one medical source individually."); *see Allen T.*, 2020 WL 3510871, at *3.

Dr. Alexander

On June 28, 2018, Dr. Alexander completed a Physical Residual Function Capacity Statement. He identified Plaintiff's objective signs and clinical findings as (1) an MRI showing chronic Hill-Sachs and Bankart and (2) an x-ray of knees showing severe medial osteoarthritis and mild patellofemoral lateral compartment osteoarthritis. In Dr. Alexander's opinion, Plaintiff would have frequent pain severe enough to interfere with concentration and attention but rarely for simple work tasks. She could sit for less than one hour in an eight-hour workday and stand/walk for less than one hour in an eight-hour workday.[10] According to Dr. Alexander, Plaintiff has

---

*Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006) (ALJ's error is harmless where such error is inconsequential to the ultimate non-disability determination).

[9] In many respects, Dr. Santiago's opinion regarding Plaintiff's limitations was less restrictive than the RFC assessed by the ALJ. (*See, e.g.*, AR 61-62, opining that Plaintiff can stand/walk for six hours in an eight-hour workday and has no postural limitations.)

[10] Dr. Alexander's opinions regarding Plaintiff's ability to sit, stand, and walk are not entirely coherent. While opining that Plaintiff could sit, stand/walk for less than one hour in an eight-hour

no problems with balance when ambulating, and no limitations in stooping, crouching, or bending. Further, Dr. Alexander opined that Plaintiff has no significant limitations reaching, handling or fingering and is able to push and pull arm or leg controls for six or more hours in an eight-hour workday. (AR 712-715.)

The ALJ found Dr. Alexander's opinion restricting Plaintiff to "essentially sedentary exertion" not persuasive because it was in checklist-style form, consisted of "conclusions without rationales for functional limitations," and because it was more extreme with the objective medical evidence. (AR 23.)

Plaintiff contends that the ALJ erred in his consideration of Dr. Alexander's opinion regarding the functional limitations resulting from her knee impairment. Although Plaintiff disagrees with the ALJ's ultimate conclusion, the ALJ properly considered its consistency and supportability as he was required to do. As set forth above, the record revealed essentially mild clinical and diagnostic findings. Specifically, physical examinations of Plaintiff's right shoulder conducted in November 2016, March 2017, and June 2017 were normal, with full range of motion, and 5/5 strength. (AR 22, 288-289, 295-296.) Diagnostic studies of Plaintiff's shoulder revealed only chronic deformities and degenerative changes, with no definite fracture. Plaintiff's shoulder dislocation was reduced, and her rotator cuff was repaired. (AR 288-289, 337-339, 504, 513, 640, 721.) Diagnostic studies of Plaintiff's knee revealed mild patellofemoral lateral compartment osteoarthritis and severe medial osteoarthritis. Other than subjective reports of pain, physical examinations were relatively normal – that is, Plaintiff had no swelling, could fully extend her knees, and she reported walking for exercise despite her allegedly disabling knee pain. (AR 21-23, 365, 369, 375-376, 453, 673.)

---

workday, Dr. Alexander also opined that Plaintiff could sit for one hour and thirty minutes at a time, could stand for one hour and ten minutes at a time, and walk for 2 hours and 15 minutes at a time. Yet, he also opined that she could sit for less than one hour in an eight-hour workday. (AR 713-714.)

In light of this record, the ALJ's conclusion that Dr. Alexander's opinions – including his opinion that Plaintiff was able to sit, stand/walk for less than an hour in an eight-hour workday – were inconsistent with the objective medical record is supported by substantial evidence. Nor did the ALJ err in determining that Dr. Alexander's opinion lacked support. Plaintiff points out that Dr. Alexander cited the MRI and x-rays showing osteoarthritis in her knees and a chronic structural defect of her right shoulder. (ECF 18 at 12.) The mere existence of a diagnosis, however, is insufficient to demonstrate the severity of an impairment or that it renders a claimant disabled. *Young v. Sullivan*, 911 F.2d 180, 181 (9th Cir. 1990) (mere diagnosis of impairment does not establish disability; there must be objective medical evidence of functional limitations); *see Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir. 1993) ("The mere existence of an impairment is insufficient proof of a disability."); *Ayala v. Berryhill*, 2018 WL 3968229, at *5 (C.D. Cal. Aug. 16, 2018) ("A mere diagnosis by itself does not dictate a finding that a claimant is disabled nor that an impairment is severe."). Accordingly, the ALJ properly considered the persuasiveness of Dr. Alexander's opinions.[11]

## II.   Whether the ALJ properly considered Plaintiff's subjective complaints.

Plaintiff contends that the ALJ erred in discounting her testimony regarding his subjective symptoms and limitations. (ECF 18 at 14-18.) The Commissioner argues that the ALJ provided numerous legally sufficient reasons for his credibility determination. (ECF 19 at 10-15.)

### A.  Plaintiff's Subjective Complaints

Plaintiff alleges that she is unable to work because of problems with her knees, back, and right shoulder. (AR 39-40.) At the hearing, Plaintiff testified that she could

---

[11] Plaintiff objects to the ALJ's reliance on the checklist form as a basis for rejecting Dr. Alexander's opinion. (ECF 18 at 11.) The Court need not resolve this issue because even if it was error to rely on the form of Dr. Alexander's opinion in assessing the persuasiveness of that opinion, the ALJ properly considered its consistency and supportability.

not lift more than five pounds due to her right shoulder. When asked how much she could lift with her left arm, Plaintiff answered only one pound. Plaintiff stated that she walks to the park for exercise, and generally walks "about 20 minutes" until her legs began to hurt. She also watches TV and walks two blocks to the library to read. She was able to grocery shop and sweep the floor. (AR 37-41.)

In her Function Report, Plaintiff indicated that she is unable to sit, stand, or walk for long her knees and back hurt. She stated that she cannot pick up more than five pounds with her right arm as a result of her 2016 shoulder dislocation. Plaintiff indicated that she has no problems with personal care, she was able to prepare her own meals, and able to shop for food and clothes, but needs help carrying bags. She spends her days watching TV. (AR 243-250.)

## B.  Relevant Law

Where, as here, a claimant has presented objective medical evidence of an underlying impairment that could reasonably be expected to produce pain or other symptoms, and the ALJ has not made an affirmative finding of malingering, an ALJ must provide specific, clear, and convincing reasons before rejecting a claimant's testimony about the severity of her symptoms. *Trevizo*, 871 F.3d at 678 (citing *Garrison*, 759 F.3d at 1014-1015). "General findings [regarding a claimant's credibility] are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)). The ALJ's findings "must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain." *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 345-346 (9th Cir. 1991)) (en banc).

Factors an ALJ may consider include conflicts between the claimant's testimony and the claimant's conduct – such as daily activities, work record, or an

unexplained failure to pursue or follow treatment – as well as ordinary techniques of credibility evaluation, such as internal contradictions in the claimant's statements and testimony. *See Ghanim*, 763 F.3d at 1163. In addition, although an ALJ may not disregard a claimant's testimony solely because it is not substantiated by objective medical evidence, the lack of medical evidence is a factor that the ALJ can consider in making a credibility assessment. *Burch v. Barnhart*, 400 F.3d 676, 680-681 (9th Cir. 2005).

### C.  Analysis

The ALJ found Plaintiff's subjective complaints less than fully credible and provided the following reasons in support of this determination. (AR 21-23.)

Lack of Objective Medical Evidence

Although Plaintiff's impairments resulted in some functional limitations, the ALJ found that the medical evidence did not support the severity of Plaintiff's allegations. (AR 21-23.) As set forth above, the objective medical evidence revealed that Plaintiff retained range of motion with some pain and retained full strength.

Plaintiff objects to the ALJ's characterization of the record and points to evidence that she complained of pain to support her argument. (ECF 18 at 12-13.) Plaintiff's complaints of pain do not constitute objective medical evidence. The Court may not second guess the ALJ's determination where it is supported by substantial evidence. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) ("If the ALJ's finding is supported by substantial evidence, the court 'may not engage in second-guessing.'") (quoting *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002)); *see also Saavedra v. Berryhill*, 2019 WL 1171271, at *4 (C.D. Cal. Mar. 12, 2019) (explaining that "this Court will not second guess the ALJ's reasonable determination . . . even if the evidence could give rise to inferences more favorable to plaintiff") (citing *Chaudhry v. Astrue*, 688 F.3d 661, 672 (9th Cir. 2012)). Thus, the ALJ properly relied upon the lack of objective medical findings supporting Plaintiff's alleged symptoms and limitations. *See Burch*, 400 F.3d at 681.

Plaintiff's Treatment

The ALJ found that Plaintiff had not sought or received the type of treatment one would expect of a disabled individual, noting that she had received conservative and routine treatment consisting of medication, physical therapy, and injections. (AR 22.) Evidence that a claimant's medical treatment was relatively conservative may properly be considered in evaluating a claimant's subjective complaints. *See Tommasetti*, 533 F.3d at 1039-1040; *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007). ("[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment.") (citation omitted).

Plaintiff argues that the ALJ mischaracterized her treatment because she received a cortisone injection and eventually underwent arthroscopic surgery on her shoulder. (ECF 18 at 16-17, citing AR 787, 805.) The fact that Plaintiff has received injections for pain does not negate the reasonableness of the ALJ's finding that Plaintiff's treatment as a whole was conservative. *See Martin v. Colvin*, 2017 WL 615196, at *10 (E.D. Cal. Feb. 14, 2017) ("[T]he fact that Plaintiff has been prescribed narcotic medication or received injections does not negate the reasonableness of the ALJ's finding that Plaintiff's treatment as a whole was conservative, particularly when undertaken in addition to other, less invasive treatment methods."); *Zaldana v. Colvin*, 2014 WL 4929023, at *2 (C.D. Cal. Oct. 1, 2014) (finding that evidence of treatment including Tramadol, ibuprofen, and "multiple steroid injections" was a legally sufficient reason on which the ALJ could properly rely in support of his adverse credibility determination); *Walter v. Astrue*, 2011 WL 1326529, at *3 (C.D. Cal. Apr. 6, 2011) (ALJ permissibly discredited claimant's allegations based on conservative treatment consisting of Vicodin, physical therapy, and an injection).

Generally, arthroscopic shoulder surgery would not be characterized as conservative. *See, e.g., Joanne G. v. Berryhill*, 2019 WL 2303833, at *12 (C.D. Cal. May 29, 2019). Here, however, the Commissioner argues that Plaintiff's arthroscopic

surgery does not undermine the ALJ's characterization of Plaintiff's overall treatment considering the positive results – namely, a repair of Plaintiff's rotator cuff and resolution of edema – and the absence of evidence that additional aggressive treatment was recommended for Plaintiff's shoulder after the surgery. (ECF 19 at 13, citing AR 801.) Plaintiff does not dispute the Commissioner's assertion that the surgery was successful or that further aggressive treatment was not suggested after surgery. At least in these circumstances, the Court finds that the ALJ's characterization of Plaintiff's treatment as inconsistent with the severity of her alleged symptoms is supported by the record. *See Burch*, 400 F.3d at 679 (where the evidence is susceptible to more than one rational interpretation, ALJ's conclusion must be upheld). As such, this was an appropriate and sufficient basis for the ALJ's credibility determination.

Plaintiff's Lack of Treatment

The ALJ noted that Plaintiff requested that her physician complete disability paperwork for lower back pain yet refused to be examined for the alleged back pain. (AR 22, citing AR 374-376.) Plaintiff's failure to seek treatment for her back pain is a sufficient basis for discounting her subjective allegations. *See Orn*, 495 F.3d at 638 ("Our case law is clear that if a claimant complains about a disabling pain but fails to seek treatment, or fails to follow prescribed treatment, for the pain, an ALJ may use such failure as a basis for finding the complaint unjustified or exaggerated.").

Daily Activities

The ALJ found Plaintiff's description of her daily activities to be inconsistent with her allegations of disabling limitations. In particular, the ALJ noted that Plaintiff admitted to walking about four times a week even though she has bad knees, and was able to walk to the park and library. (AR 23, citing AR 37-40, 673.) In addition, the ALJ noted that Plaintiff reported to the consultative psychologist that she is able to dress, bathe, shop, and do household chores. (AR 23, citing AR 662.)

Inconsistency between a claimant's alleged symptoms and her daily activities may be a clear and convincing reason to find a claimant less credible. *See Ghanim*, 763 F.3d at 1165; *Tommasetti*, 533 F.3d at 1039. On the other hand, "the mere fact a [claimant] has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001).

Plaintiff argues that the ALJ's conclusion is not supported by the record. Among other things, Plaintiff points out that while she stated she could do minimal household chores, she also stated that she needed assistance to do so. (ECF 18 at 17.) Because the Court concludes that the ALJ provided a legally sufficient reason supporting his determination to partially discredit Plaintiff's testimony, even if the ALJ erred in reliance on Plaintiff's daily activities, any error in this regard was harmless.

### III.   Plaintiff's Notice of New Authority

On September 3, 2021, Plaintiff filed a Notice of New Authority regarding the constitutionality of the appointment of the Commissioner of Social Security. (ECF 21.) The parties have filed additional briefing in accordance with the Court's Order. (ECF 26, 32.) Citing various recent Supreme Court decisions and an opinion issued by the Office of Legal Counsel, Plaintiff argues that the statutory restriction to the President's ability to remove the Social Security Administration Commissioner was unconstitutional. As a result, Plaintiff contends that she is entitled to a de novo hearing because the ALJ who decided her claim (James Carberry) was not acting pursuant to properly delegated authority.

The Commissioner argues that the Court should decline to consider Plaintiff's claim because she failed to raise it in her administrative proceedings; Plaintiff is not entitled to a remand under the Supreme Court authority she relies upon; and the Court should deny Plaintiff's request based upon other legal principles and prudential considerations. (ECF 32 at 2-17.)

With regard to whether Plaintiff has effectively forfeited her right to raise a constitutional claim by failing to raise it in her administrative proceedings, the Court notes the recent decision in *Carr v. Saul*, 141 S. Ct. 1352, 1362 (2021). In *Carr*, the Supreme Court held that an affected person may challenge a decision reached by an ALJ who was not constitutionally appointed at the time of the decision and rejected the argument that Appointments Clause challenges are forfeited when they are presenting for the first time before a federal court. *Carr*, 141 S. Ct. at 1362. Assuming without deciding that *Carr* applies equally to challenges based upon an unconstitutional restriction on removal, Plaintiff may raise her claim here even though she failed to raise it in the administrative proceedings. Nevertheless, for the following reasons, the Court finds that Plaintiff's argument lacks merit.

In support of her constitutional challenge, Plaintiff relies upon a series of Supreme Court decisions regarding the Appointments Clause and the Presidential removal power: *Collins v. Yellen*, 141 S. Ct. 1761 (2021), *Seila Law LLC v. CFPB*, 140 S. Ct. 2183 (2020), and *Lucia v. SEC*, 138 S. Ct. 2044, 2055 (2018).

In *Lucia*, the Court held that ALJs of the Securities and Exchange Commission are Officers of the United States and must be constitutionally appointed. *Lucia*, 138 S. Ct. at 2055. In *Seila Law*, the Supreme Court held that a for-cause restriction of the President's executive power to remove the CFPB's single director violated the separation of powers doctrine. *Seila Law*, 140 S. Ct. at 2197. In *Collins*, the plaintiffs sought a judicial declaration invalidating prior actions by the FHFA directors, who possessed removal protection and therefore headed an unconstitutionally structured agency. *Collins*, 141 S. Ct. at 1787 (contending that FHFA actions were "adopted and implemented by officers who lacked constitutional authority and that their actions were therefore void *ab initio*"). The Supreme Court found such relief unwarranted. *Id*. at 1788. The key, the Court explained, is demonstrating that the unconstitutional provision actually caused the plaintiff harm. *Id*. at 1788-1789. The Court refused to invalidate the prior actions in their entirety stating:

All the officers who headed the FHFA during the time in question were properly *appointed*. Although the statute unconstitutionally limited the President's authority to *remove* the confirmed Directors, there was no constitutional defect in the statutorily prescribed method of appointment to that office. As a result, there is no reason to regard any of the actions taken by the FHFA ... as void.

*Id*. at 1787 (emphasis in original).

Plaintiff here concedes that ALJ Carberry was properly appointed by Acting Commissioner Berryhill when he decided her disability claim (ECF 26 at 2), and therefore there is no Appointments Clause violation. *See Rivera-Herrera v. Kijakazi,* 2021 WL 5450230, at *6 (E.D. Cal. Nov. 22, 2021) ("although the claim is properly raised for the first time in federal court, the ALJ who adjudicated Plaintiff's claim on September 18, 2019 was properly appointed pursuant to former Acting Commissioner Berryhill's July 16, 2018 ratification of ALJ appointments. As such, there is no Appointments Clause violation."); *Lisa Y. v. Comm'r of Soc. Sec*., 2021 WL 5177363, at *5 (W.D. Wash. Nov. 8, 2021) (same); *Marrs v. Comm'r of Soc. Sec.*, 2021 WL 4552254, at *4 (N.D. Tex. Oct. 5, 2021) (same); *see also Collins*, 141 S. Ct. at 1788 (explaining that a new hearing was appropriate in *Lucia* because that case "involved a Government actor's exercise of power that the actor did not lawfully possess").

Instead, Plaintiff's Constitutional challenge is based upon the removal restriction found in 42 U.S.C. § 902(a)(3), which provides that the Commissioner is appointed to a six-year term and may only be removed from office "pursuant to a finding by the President of neglect of duty or malfeasance in office." Defendant concedes that § 902(a)(3) violates separation of powers to the extent it is construed as limiting the President's authority to remove the Commissioner without cause. (ECF 32 at 4.) Nevertheless, the Commissioner argues that Plaintiff is not entitled to a new hearing because she has failed to show any connection between the

1   unconstitutional removal clause and ALJ Carberry's decision denying her benefits.
2   (ECF 32 at 4-10.) For the following reasons, the Court agrees.

3       "*Collins* is controlling with respect to the remedy for any unconstitutionality
4   in the removal provisions." *Decker Coal Co. v. Pehringer*, 8 F.4th 1123, 1137 (9th
5   Cir. 2021). Accordingly, a claimant seeking relief must show that an unconstitutional
6   removal restriction actually caused her harm. *See Collins*, 141 S. Ct. at 1787-1789 &
7   n.24 ("What we said about standing in *Seila Law* should not be misunderstood as a
8   holding on a party's entitlement to relief based on an unconstitutional removal
9   restriction ... [and] does not mean that actions taken by such an officer are void
10  *ab initio* and must be undone."); *Decker Coal*, 8 F.4th at 1137 ("Here, the ALJ
11  lawfully exercised power that he possessed by virtue of his appointment, which the
12  Secretary ratified before the ALJ adjudicated the claim. Absent a showing of harm,
13  we refuse to unwind the decisions below.").

14      In an attempt to satisfy the harm requirement, Plaintiff argues that when an
15  ALJ acts under the "protection of an unconstitutional agency head and is no longer
16  subject to sufficient accountability, the Court should find prejudice." (ECF 26 at 2.)
17  Plaintiff points to comments made by President Biden reflecting a negative
18  perception of Commissioner Saul and argues that the "executive perception of
19  Commissioner Saul as undermining and politicizing the disability process is the type
20  of harm that warrants a remand..." (ECF 26 at 2-3.) Essentially, Plaintiff asks the
21  Court to assume that any ALJ who heard and decided a disability claim during the
22  tenure of Commissioner Saul lacked "sufficient indicia of accountability" and
23  presume that every claimant was harmed under *Collins*. (*See* ECF 26 at 3-4.)
24  Plaintiff's suggestion would extinguish the harm requirement and is contrary to
25  *Collins*.

26      Plaintiff has failed to show any connection between the unconstitutional
27  removal clause and ALJ Carberry's decision denying her benefits. She identifies no
28  particular harm suffered by virtue of her claim being adjudicated during

Commissioner Saul's tenure by an ALJ who was otherwise properly appointed. Further, nothing in the record supports the conclusion that the disability decision in Plaintiff's case is in anyway traceable to Commissioner Saul. Accordingly, Plaintiff cannot rely upon the unconstitutional removal clause as a basis for obtaining a new hearing. *See Rivera-Herrera,* 2021 WL 5450230, at *8; *Lisa Y.*, 2021 WL 5177363, at *8 ("Reversal is not mandated under *Seila Law* or *Collins* because § 902(a)(3)'s removal clause is severable, and because there is no possibility § 902(a)(3)'s removal clause harmed Plaintiff."); *Catherine J.S.W. v. Comm'r of Soc. Sec.*, 2021 WL 5276522, at *8 (W.D. Wash. Nov. 12, 2021) (same); *Amanda B. v. Comm'r of Soc. Sec.*, 2021 WL 4993944, at *9 (D. Or. Oct. 26, 2021) ("Because Plaintiff offers nothing that traces the decision by the ALJ in her case to any alleged injurious conduct by the SSA Commissioner, she has not demonstrated traceability and her constitutional violation claim fails for lack of standing."); *see also Decker Coal*, 8 F.4th at 1136-1138 (plaintiff not entitled to new hearing based upon allegedly unconstitutional removal provision where the plaintiff failed to show make any showing of a nexus between the allegedly unconstitutional removal provisions and the ALJ's decision).

### ORDER

IT IS THEREFORE ORDERED that Judgment be entered affirming the decision of the Commissioner of Social Security and dismissing this action with prejudice.

DATED:  12/28/2021

_____
ALEXANDER F. MacKINNON
UNITED STATES MAGISTRATE JUDGE

23